# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

|   |   |
|---|---|
| **ROXANA RIVERA,** | * |
| Plaintiff, | * |
| v. | * Civil Case No.: PWG-17-642 |
| **KANTUTAS RESTAURANT, LLC, ET AL,** | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION & ORDER

On March 3, 2017, Plaintiff Roxana Rivera filed this action against her former employer, Kantutas Restaurant, LLC and its owner, Maria M. Peredo ("Defendant") alleging that Defendants failed to pay her minimum wages and overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-430. Compl. ¶¶ 12–13, ECF No. 2. In addition, the Complaint alleges that Defendants' failure to pay minimum wages and overtime compensation also violated the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509. *Id.* ¶¶ 1, 15. On September 6, 2017, the parties jointly moved for court approval of the settlement agreement they have executed. Jt. Mot. & Mem., ECF No. 30. I find the net amount Rivera is to receive to be fair and reasonable in light of the facts of this case. Additionally, I approve the attorneys' fee award under a lodestar calculation.

## I. BACKGROUND

Rivera worked as a waitress at Kantutas Restaurant from approximately July 6, 2013 to December 23, 2016. Compl. ¶ 10. Plaintiff alleges that she typically worked fifty-four hours per week. *Id.* ¶ 11. Plaintiff alleges that she did not receive her pay in consistent increments and that Defendants paid her below the federal and state minimum wages during her tenure, was never paid overtime, and that her employers failed to comply with the tip credit requirements of the FLSA and MWHL. *Id.* ¶ 12–15. Plaintiff alleges that she was owed approximately $44,225.00 in uncompensated overtime and minimum wages. Jt. Mot. & Mem. 5.

The Settlement Agreement:

> releases Defendants . . . from any and all claims . . . whether known or unknown, that arose or may have arisen . . . and acceptance of this Agreement and all provisions set forth herein is in full accord and satisfaction of the claims set forth in the Litigation and to any claims or damages asserted directly, indirectly which could have been asserted, should have been asserted, or could be asserted in the Litigation. This Release is intentionally broad.

Agreement ¶ 4, ECF No. 30-1. The Agreement provides for litigation costs and attorneys' fees. *Id.* ¶ 1; Jt. Mot. & Mem. 5. The parties have agreed to settle this case for $35,000 based on the following terms: Defendants are to pay Rivera $19,500 in wage-based and liquidated damages; and Defendants are to pay Rivera's attorneys, Zipin, Amster & Greenberg, LLC, $15,500.00 in fees and costs. Agreement ¶ 1.

## II. DISCUSSION

### a. FLSA Settlement Generally

Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S.

697, 706 (1945). Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at \*2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id.* at \*3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at \*2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," which includes findings with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at \*10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at \*2–3 (D. Md. Aug. 31, 2011)). These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect [her] rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354.

### b. *Bona Fide* Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at \*16–17. The Joint

3

Motion and Memorandum makes clear that several issues are in *bona fide* dispute. Most importantly, the parties disagree about whether Rivera ever worked more than forty hours in a work week, whether she was paid, and if Defendants abided by the tip-credit requirements. Jt. Mot. & Mem. 2.

### c. Fairness & Reasonableness

In evaluating the fairness and reasonableness of this settlement, I must consider:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff[]; (5) the opinions of class counsel . . . ; and (6) the probability of plaintiff['s] success on the merits and the amount of the settlement in relation to the potential recovery.

*Lomascolo*, 2009 WL 3094955, at *10.

First, the parties engaged in discovery and served and responded to Interrogatories and Requests for Production of Documents. Jt. Mot. & Mem. 3. With regard to the second factor, the parties state that the parties settled the case during discovery and that

> [p]rior to accepting the settlement agreement, Defendants and Plaintiff—with the advice of their respective counsel—considered the potential value of Plaintiff's claims, considered the strengths/weaknesses of Defendants' defenses, and both parties independently concluded that settlement is/was in their best interests and a fair and reasonable resolution of Plaintiff's claims. Defendants further support this result because it eliminates the uncertainties and risks of further litigation.

*Id*. The parties have confirmed that there was no fraud or collusion. *Id.* I accept these representations by experienced counsel and am satisfied that no fraud or collusion contributed to the parties' decision to settle the claims. Additionally, the parties have established counsel's experience with FLSA cases. *See id.* at 4. As for the fifth factor, it is not relevant in this, as it pertains to class actions. *See Lomascolo*, 2009 WL 3094955, at *10.

4

With regard to the sixth factor, Rivera sought $44,225.00 in unpaid minimum wages and also sought liquidated damages. Jt. Mot. & Mem. 5; Pl.'s Discosure of Damages, ECF No. 18. The bases for Rivera's liquidated damages claims are sections of the FLSA and MWPCL that permit enhanced recovery for, among other things, unpaid overtime wages. *See* 26 U.S.C. § 216; Lab. & Empl. § 3-507.2. Exluding any amount Rivera may have obtained in liquidated damages, the settlement amount of $19,500 therefore amounts to 44.1% of the unpaid wages that Rivera seeks. *See* Agreement ¶ 1.

In order to secure liquidated damages, the Plaintiff would have to prove that the failure to pay the disputed wages was not the result of a "good faith" belief that the FLSA did not require such payment. 29 U.S.C. § 260. The settlement agreement takes into account that there are *bona fide* disputes in this case and that "[i]f Plaintiff had succeeded at trial, Defendants likely would have filed for bankruptcy." Jt. Mot. & Mem. 5. Thus, if liability could be established, the ability of Rivera to *collect* a judgement also was in serious doubt. Given the *bona fide* disputes in this case there, is a "possibility that, even if liability were found, Plaintiff may not be entitled to additional liquidated damages," *see Berrios v. Green Wireless, LLC*, No. GJH-14-3655, 2016 WL 1562902, at *3 (D. Md. Apr. 18, 2016),[1] and there is the possibility Defendants would be judgment proof if this case proceeded to trial, Jt. Mot. & Mem. 5. Under these circumstances, I do not find the settlement amount unreasonable. It is not unreasonable to settle for a collectible amount instead of proceeding to trial to recover a larger, uncollectible judgment.

---

[1] The Settlement Agreement designates $6,500.00 of the settlement amount as unpaid wages and the remaining $13,000 as liquidated damages. Agreement ¶ 1. Nevertheless, given the existence of *bona fide* disputes among the parties, it is possible that Rivera would be unable to recover liquidated damages at trial. *See Berrios*, 2016 WL 145902, at *3. Irrespective of the parties' designation that the settlement covers both unpaid wages and liquidated damages, the appropriate comparison for the reasonableness inquiry is the amount of unpaid wages Plaintiff seeks compared to the total settlement amount. *See id.*

The Settlement Agreement contains a general release of claims beyond those specified in the Complaint. Agreement ¶ 4. A general release like this can render settlement agreements unreasonable. *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that "fails judicial scrutiny"); *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, No. 10-5243, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012). But, if the employee is compensated reasonably for the release executed, the settlement can be accepted, and I am not required to evaluate the reasonableness of the settlement as to the non-FLSA claims. *See Saman*, 2013 WL 2949047, at *5 (citing *Robertson v. Ther-Rx Corp.*, No. 09-1010-MHT, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011); *Bright v. Mental Health Res. Ctr., Inc.*, No. 09-1010, 2012 WL 868804, at *2 (M.D. Fla. Mar. 14, 2012)). As explained above, the Agreement compensates Rivera for 44.1% of her claims for unpaid wages. This percentage fairly compensates the Plaintiff for the general release executed given the *bona fide* disputes and stage of the case.

The proposed settlement does not provide for an entry of judgment, and some courts view settlements without such a stipulated judgment as *per se* unreasonable. *See Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 410 (D. Md. 2014) (citing, *inter alia*, *Lynn's Food Stores*, 679 F.2d at 1353; *Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012)). But *Brooklyn Savings v. O'Neil*, 324 U.S. 697 (1945), on which these courts rely, did not "involve[] a settlement executed between an employer and employee as the result of a *bona fide* dispute as to the coverage of the FLSA." *Duprey*, 30 F. Supp. 3d at 410 (quoting *O'Connor v. United States*, 308 F.3d 1233, 1242 (Fed. Cir. 2002)). In the absence of clear binding authority to the contrary, however, when there are "*bona fide* disputes as to liability and the costs and risks of proceeding

6

on the merits" a plaintiff "is permitted to agree that . . . accepting a lesser amount than he ultimately could receive at trial is reasonable." *Id.* This settlement, like the one in *Duprey*, "is better viewed as a stipulation to an amount that fairly compensates [Plaintiff] for the release, given the specific risks of the case at bar, rather than an impermissible waiver under *Brooklyn Savings*." *Id.* The amount provided in consideration for the release is fair and reasonable.

### d. Attorneys' Fees

Next, the Settlement Agreement's provisions regarding attorneys' fees must be assessed for reasonableness. *Saman*, 2013 WL 2949047, at *6. In calculating an award of attorneys' fees, the Court first must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award" (internal citations omitted)). "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). In determining whether the lodestar results in a reasonable fee, this Court evaluates "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)." *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (citing *Johnson*, 488 F.2d at 717–19). However, the Supreme Court has noted (and experience awarding attorneys' fees has confirmed) that the subjective *Johnson* factors provide very little guidance and, in any event, that "'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" *Perdue*, 559 U.S. at 551, 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 549, 566 (1986)).

An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984); *see Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (same). In Appendix B to its Local Rules (D. Md. Jul. 2014, Dec. 2015 Supp.), available at http://www.mdd.uscourts.gov/local-rules, this Court has established rates that are presumptively reasonable for lodestar calculations. *See, e.g., Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000). The billing rates listed for Plaintiff's three attorneys and the paralegal(s) are within the presumptively reasonable rates set forth in Appendix B of this Court's Local Rules. I find that these rates are reasonable.

As for the hours expended, the Joint Motion and Memorandum for Approval of Settlement Agreement submits detailed information listing the billable hours that Rivera's three attorneys and paralegal(s) spent for each stage of the litigation. Jt. Mot. & Mem. 6–7. The attorneys worked a total of 56.5 hours on this case and the paralegal(s) worked 0.4 hours. *Id.*

The parties' did address the *Johnson* factors and I agree that counsel's experience, the genuine disputes in this case, and hours attributed to each stage of the litigation supports a finding that the number of hours expended were reasonable. Moreover, while Rivera's attorneys also noted costs incurred throughout the case including: $165 for filing fees and service fees of $95.00, such that fees and costs total $15,921.00, counsel seeks approval of attorneys' fees and costs in the amount of $15,500. Further, the Agreement indicates that this amount is in addition to and not a part of the $19,500 to be paid to Rivera. Agreement ¶ 1(a)–(b). Taking into account the period of litigation of approximately six months, which included substantial discovery and preparation for a settlement conference, I find that $15,500.00 for fees and costs is reasonable. Accordingly, I will approve the attorneys' fee award of $15,500.00.

### III. ORDER

Accordingly, it is this 27th day of April, 2018, hereby ORDERED that:

1. The Joint Motion to Approve Settlement, ECF No. 30, IS GRANTED.
2. The Clerk is DIRECTED to CLOSE THE CASE.

/S/
Paul W. Grimm
United States District Judge

jml